Eric Baum NY#2591618 (Pro Hac Vice To Be Filed)
Andrew Rozynski NY#5054465 (Pro Hac Vice To Be Filed)
**EISENBERG & BAUM, LLP**
24 Union Square East
Fourth Floor
New York, NY 10003
Telephone No. 212-353-8700
Facsimile No. 212-353-1708
E-mail: ebaum@EandBLaw.com
         arozynski@EandBLaw.com

William A. Richards #013381
Peter A. Silverman #020679
Austin J. Miller #033322
**BASKIN RICHARDS PLC**
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7979
Facsimile No. 602-595-7800
E-mail: brichards@baskinrichards.com
         psilverman@baskinrichards.com
         amiller@baskinrichards.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ella Mae Hammack,<br><br>                           Plaintiff,<br><br>v.<br><br>Scottsdale Healthcare Hospitals d/b/a HonorHealth Deer Valley Medical Center, f/k/a John C. Lincoln Deer Valley Hospital,<br><br>                           Defendant. | **Case No.**<br><br>**COMPLAINT** |

Plaintiff Ella Mae Hammack ("Plaintiff") brings this action, by and through her undersigned counsel, Eisenberg & Baum, LLP (pro hac vice application to be filed), and Baskin Richards PLC, and for her claims against Defendant Scottsdale Healthcare Hospitals doing

business as HonorHealth Deer Valley Medical Center, formerly known as John C. Lincoln Deer Valley Hospital ("HonorHealth" or "Defendant"), hereby alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred, and most effective means of communication. Defendant, HonorHealth, discriminated against Plaintiff by refusing to provide auxiliary aids and services despite her requests for effective communication. Defendant discriminated against Plaintiff by failing to provide on-site ASL interpreters when necessary, by providing malfunctioning Video Remote Interpreting ("VRI"[1]) systems, by failing to adequately train its personnel in the use of VRI systems, and by requiring Plaintiff to rely upon other means of communication, including passing of notes and/or other methods that are inadequate for Plaintiff's participation in the medical treatment of her spouse. Plaintiff seeks declaratory relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulation, 45 C.F.R. Part 84; Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116; the Arizonans with Disabilities Act ("AzDA"), A.R.S. § 41-1492, *et seq.*, and other state and federal common law rights.

2. Defendant has demonstrated and continues to demonstrate that Defendant's staff is not properly trained regarding how to identify when live, in-person interpreter services are required for effective communication with Deaf patients and their companions, and when other forms of communication, including VRI technology, the passing of written notes, or lip reading offer inadequate and ineffective communication for a deaf patient or his deaf companion.

3. Defendant has similarly demonstrated that Defendant's staff is not properly trained regarding how to utilize or maintain VRI systems or fix malfunctioning VRI systems. This lack of training resulted in delays and failures to communicate with Plaintiff in critical

---

[1] Video remote interpreting is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or off-site interpreter.

2

medical care situations. As a result of these delays and failures, Plaintiff received service that was objectively substandard and that was not equal to the service provided to hearing companions of patients.

4. Upon information and belief, despite being put on notice that problems with VRI resulted in ineffective communication with Plaintiff, Defendant continues to wrongfully insist that VRI systems or other inadequate forms of communication be utilized for Plaintiff as a substitute for qualified, in-person ASL interpreters.

5. Plaintiff brings suit to address these discriminatory practices and obtain compensation for the damages caused by Defendant's discriminatory and unlawful policies, procedures and practices.

## THE PARTIES

6. Defendant Scottsdale Healthcare Hospitals is an Arizona non-profit corporation registered and doing business in the State of Arizona.

7. Around January 1, 2015, John C. Lincoln Health Network merged into Scottsdale Healthcare Hospitals to create the entity known as HonorHealth, a tradename for Scottsdale Healthcare Hospitals.

8. At all times hereinafter mentioned, Defendant Scottsdale Healthcare Hospitals doing business as HonorHealth Deer Valley Medical Center, formerly known as John C. Lincoln Deer Valley Hospital was and is still licensed and doing business in the State of Arizona, with a principal place of business in Phoenix, Arizona.

9. HonorHealth operates hospitals, specialty medical centers, surgery centers and outpatient facilities. The company operates facilities throughout the Phoenix metropolitan area.

10. Upon information and belief, HonorHealth runs five hospitals in Phoenix and Scottsdale and more than 70 primary, specialty, and immediate care locations. https://www.honorhealth.com/company.

11. HonorHealth's Arizona hospital facilities include HonorHealth Deer Valley Medical Center, formerly known as John C. Lincoln Deer Valley Hospital ("Deer Valley Hospital"), which is located at or near 19829 North 27th Avenue, Phoenix, Arizona, 85027, and

whose actions and omissions give rise to claims in this matter.

12. Deer Valley Hospital is a place of public accommodation as defined in A.R.S. § 41-1492(11)(f) and HonorHealth is a recipient of federal financial assistance. Thus, HonorHealth is subject to the requirements of Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA.

13. On information and belief, HonorHealth had sufficient financial resources to afford all aids and services necessary to provide effective communication to Plaintiff.

14. Defendant's website acknowledges the importance of patient communication at HonorHealth. It states, "HonorHealth focuses on you. Physicians and staff:

- Take the time to understand your unique needs.
- Engage you in conversations about health because your input is valuable.
- Are never too busy to go beyond what's expected to offer a helping hand."

https://www.honorhealth.com/company.

15. Plaintiff Ella Mae Hammack is an individual who at all material times resided in Maricopa County, Arizona.

16. Plaintiff is profoundly Deaf and communicates primarily in ASL, and is substantially limited in the major life activities of hearing and speaking within the meaning of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA.

17. Plaintiff Ella Mae Hammack was a companion of her husband while he was a patient at HonorHealth's Deer Valley Hospital in March 2017, May 2017, September 2017, October 2017, and November 2017.

18. Plaintiff Ella Mae Hammack was a companion to her now-deceased husband, Bill Hammack, at HonorHealth, where she and her husband were denied appropriate auxiliary aids and services for their disabilities despite repeated requests by Plaintiff and Mr. Hammack to facilitate effective communication between them and HonorHealth's agents, employees, and/or medical staff during Mr. Hammack's medical treatment and care.

19. Throughout visits by Plaintiff and Mr. Hammack at HonorHealth between March

4

2017 and November 2017, Defendant repeatedly denied Plaintiff effective communication as required by law. Defendant HonorHealth's denial of effective communication for Plaintiff include providing Plaintiff with malfunctioning VRI systems and/or repeatedly denying her and her husband's requests for on-site qualified ASL interpreters.

20. When Plaintiff attempted to utilize VRI equipment at Defendant's Deer Valley Hospital, it often stopped, became pixilated, or lacked visibility, leaving communication unreliable or nonexistent. Instead of providing an on-site ASL interpreter when the VRI equipment did not work, Defendant chose to do nothing at all or to force Plaintiff to rely on other inadequate methods of communication, resulting in ineffective communication with Plaintiff.

21. Plaintiff put Defendant HonorHealth on notice that the VRI systems at Defendant's Deer Valley Hospital did not provide effective communication. Despite this notice, Defendant continued to wrongfully mandate the use of VRI instead of on-site, qualified ASL interpreters.

**JURISDICTION & VENUE**

22. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law. In addition, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced, the parties all resided within this District at all material times, and the acts and omissions giving rise to the causes of action asserted herein occurred in this District.

**STATEMENT OF FACTS**

24. Plaintiff Ella Mae Hammack is profoundly deaf and requires a qualified sign language interpreter to communicate effectively in medical settings.

25. Bill Hammack was Ms. Hammack's husband until his passing in January 2018.

26. Mr. Hammack was profoundly deaf and required a qualified sign language

5

interpreter to communicate effectively in medical settings.

27. On March 22, 2017, Mr. and Ms. Hammack went to the Emergency Room at Defendant's Deer Valley Hospital because Mr. Hammack was experiencing symptoms related to pneumonia.

28. When Plaintiff and Mr. Hammack arrived at the hospital, they requested a qualified, on-site ASL interpreter for effective communication.

29. However, Defendant's staff denied their request, and instead provided a Video Remote Interpreting ("VRI") system, which staff had a difficult time starting up and which experienced persistent screen freezing and choppiness.

30. In addition to the technical problems with the VRI system, at one point when a VRI connection was made, the interpreter was unskilled and appeared to be using a form of home signs or gestures, which was unsuccessful for the Hammacks.

31. Defendant's staff attempted to explain to Mr. and Ms. Hammack that Mr. Hammack was experiencing a problem with his esophagus, but they were unable to understand because of the lack of effective communication.

32. Mr. Hammack was admitted to the hospital, and throughout his stay, Defendant's staff attempted to use the VRI system unsuccessfully.

33. The Hammacks continued to request a qualified, on-site ASL interpreter, but none was ever provided.

34. At one point during Mr. Hammack's stay at Deer Valley Hospital, a social worker met with the Hammacks.

35. At this meeting, Ms. Hammack had to use FaceTime to call her son, who lives in Wisconsin, to help interpret for the Hammacks.

36. On March 24, 2017, Mr. Hammack was discharged from Deer Valley Hospital.

37. At Mr. Hammack's discharge, Defendant's staff continued to rely on VRI to attempt to communicate his discharge instructions.

38. However, the Hammacks were unable to use the VRI system effectively and were forced to attempt to read the discharge instructions in English.

39. On May 7, 2017, Mr. and Ms. Hammack went back to Deer Valley Hospital because Mr. Hammack was experiencing symptoms of pneumonia.

40. Upon arriving at the hospital, Mr. and Ms. Hammack requested a qualified, on-site ASL interpreter for effective communication.

41. Defendant's staff again denied their requests and did not provide a qualified, on-site ASL interpreter.

42. Instead, Defendant's staff attempted to utilize a VRI system, which experienced constant screen freezing and was unsuccessful.

43. On information and belief, Defendant's staff found a concerning spot on Mr. Hammack's kidney after taking an X-Ray.

44. Defendant's staff did not inform Mr. or Ms. Hammack about this spot until months later.

45. On May 9, 2017, Mr. Hammack was discharged from Deer Valley Hospital.

46. On September 22, 2017, Mr. and Ms. Hammack went back to Deer Valley Hospital because Mr. Hammack was again experiencing pneumonia-related symptoms.

47. Defendant's staff subjected Mr. Hammack to several tests and procedures during this visit, including a colonoscopy, a CT scan, and a kidney biopsy.

48. Defendant's staff denied their request and did not provide a qualified, on-site ASL interpreter.

49. Instead, Defendant's staff brought out a VRI system to attempt communication with Mr. and Ms. Hammack.

50. The VRI system experienced technical difficulties and did not provide effective communication for Mr. or Ms. Hammack.

51. On or around October 6, 2017, Mr. Hammack was discharged from Deer Valley Hospital.

52. Defendant's staff finally provided an on-site interpreter for Mr. Hammack's discharge instructions.

53. On October 28, 2017, Mr. and Ms. Hammack went back to Deer Valley Hospital

because Mr. Hammack was suffering from hemorrhoids.

54. Defendant's staff denied their request and did not provide a qualified, on-site ASL interpreter for Mr. and Ms. Hammack.

55. Shortly after Mr. Hammack was admitted, Defendant's staff performed a colonoscopy on him.

56. After the procedure, Mr. Hammack was moved to the intensive care unit ("ICU") and was put on a breathing machine.

57. Defendant's staff did not tell Ms. Hammack that her husband was moved to the ICU, and Ms. Hammack found out only after going to Mr. Hammack's regular hospital room and not seeing him there.

58. Mr. Hammack stayed in the ICU for approximately one week.

59. During this time, Defendant's staff failed to provide either an on-site ASL interpreter or a VRI system for effective communication.

60. After Mr. Hammack was moved out of the ICU and into a regular hospital room, Defendant's staff brought a VRI system to Mr. Hammack's room to attempt communication with the Hammacks.

61. However, the VRI system experienced multiple problems, including screen freezing.

62. Additionally, the screen for the VRI system was too small and Ms. Hammack could not see the interpreter's signs.

63. After experiencing these issues with two separate doctors who came to see Mr. Hammack, Defendant's staff finally provided an on-site ASL interpreter for the Hammacks, who was present during limited times for the remainder of Mr. Hammack's visit.

64. On November 8, 2017, Mr. Hammack was discharged from Deer Valley Hospital.

65. Although Defendant's staff, agents, and medical personnel knew or reasonably should have known that Plaintiff is Deaf and requires the use of qualified on-site ASL interpretation services through Plaintiff's interactions with Defendant, Defendant nonetheless refused to provide an on-site ASL interpreter for Plaintiff on multiple occasions, including

when her husband was in the ICU.

66. Rather than providing an ASL interpreter, Defendant continued to rely upon ineffective communications through a faulty VRI system and handwritten notes.

67. Plaintiff thus remained confused and concerned about Mr. Hammack's condition.

68. Defendant's failure to provide on-site, qualified sign language interpreters made Mr. Hammack's treatment and hospital experiences more difficult and caused harm because it prevented effective communication between Plaintiff and Defendant's staff.

69. As a result of Defendant's failure to ensure effective communication with Plaintiff, Plaintiff received service that was objectively substandard and that is inferior to service provided to companions who can hear.

70. Defendant intentionally discriminated against Plaintiff and acted with deliberate indifference to her communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

71. Defendant's denial of effective communication during the medical treatment of Mr. Hammack caused Plaintiff significant pain, suffering, and emotional distress. On information and belief, due to Defendant's refusal to provide effective communication, Plaintiff did not meaningfully understand critical information about Mr. Hammack's diagnoses, prognoses, medication and/or treatment options and lacked a full and complete understanding of the risks and benefits thereof.

72. As alleged above, Plaintiff repeatedly put Defendant's staff on notice that communication was not effective by alerting them of the inadequacy of VRI systems, the inadequacy of handwritten communications and to her need for qualified ASL interpreters.

73. Despite such notice, Defendant failed and/or refused to provide qualified on-site ASL interpreters, failed and/or refused to ensure that VRI systems were appropriate for Plaintiff's circumstances, failed and/or refused to ensure that available VRI systems were properly functioning, failed and/or refused to ensure that the Defendant's agents were properly trained and qualified in the use of the VRI systems, and failed and/or refused to fix VRI systems that were not working properly, or failed and/or refused to understand the inadequacy of

9

handwritten notes as a sole method of communication.

74. Rather, Defendant knowingly limited Plaintiff to the little communication she could achieve through the malfunctioning VRI, and through such inadequate methods as vague gestures or cryptic notes.

75. Upon information and belief, Defendant is aware of its obligations under federal and state law to provide adequate and effective communication for Deaf, hard of hearing, and speech impaired individuals that visit its medical facilities as either patients or companions of patients.

76. Also upon information and belief, Defendant and its agents, including those medical personnel attending Plaintiff's husband, were aware that the failure to provide adequate and effective communication to Plaintiff could result in serious and harmful anxiety, confusion, lack of understanding, frustration, depression and other serious emotional harms, and could prevent Plaintiff from enjoying the right and ability to understand and participate in her husband's medical care.

77. Upon information and belief, Defendant refuses to hire qualified on-site qualified ASL interpreters as a matter of policy at its hospital and other facilities, and insists upon communication through such inadequate means of communication as handwritten notes, gestures, lip reading, and/or VRI in all cases.

78. Upon information and belief, HonorHealth informs its Deer Valley Hospital patients and companions of a right to access language assistance services in eighteen languages, none of which is ASL.

79. Upon information and belief, the refusal to offer on-site, qualified, ASL interpreter services to Plaintiff is the result of a policy or practice of Defendant to discourage the use of qualified on-site interpreters without regard to whether VRI services or other methods of communication will provide effective communication.

80. Reliance by Deaf and hard of hearing and speech impaired individuals upon family members to interpret medical communications for them is unwise and dangerous. Such family members are generally not trained to act as interpreters, particularly in medical and

hospital settings. Family members often are untrained in accurately and precisely interpreting and conveying for and to the hearing impaired individual the complete and accurate content of medical communications.

81. In addition, family members are generally too personally and emotionally involved with the hearing impaired patient to act impartially and with the emotional detachment that is necessary for qualified sign language interpreters, particularly in medical settings and communications.

82. As a result of Defendant's failure to ensure effective communication with Plaintiff, Plaintiff received service that was objectively substandard and that is inferior to service provided to patient family members who can hear.

83. Furthermore, despite its knowledge and understanding of its legal obligations to provide adequate and effective communication to the Plaintiff, and its knowledge and understanding that the failure to provide adequate and effective communication to Plaintiff could and would result in denial of the Plaintiff's rights under state and federal law and in serious and material harm and injury to Plaintiff, Defendant knowingly, intentionally and maliciously failed and/or refused to provide adequate and effective communication to Plaintiff in an intentional and/or deliberately indifferent violation of Plaintiff's rights.

84. Defendant's actions and omissions resulting in harms to Plaintiff were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiff under federal and state law and the substantial risk of serious and material harms to Plaintiff. Therefore, to the extent allowed by any applicable law, Defendant's actions would warrant the imposition of punitive or exemplary damages to punish the Defendant for its wrongful conduct and to deter other similarly situated persons or entities from similar future conduct.

**COUNT 1: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

85. Plaintiff repeats and realleges all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

86. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29

U.S.C. § 794 has been in full force and effect and has applied to the Defendant's conduct.

87. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to the Defendant's conduct.

88. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activities of hearing and speaking within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9), and its implementing regulations at 45 C.F.R. § 84.3(j). Accordingly, she is an individual with a disability as defined under the Rehabilitation Act.

89. At all times relevant to this action, Plaintiff was qualified to receive services through Defendant's facilities.

90. Upon information and belief, at all times relevant to this action, Defendant has received federal financial assistance, including Medicaid reimbursements, and has been principally engaged in the business of providing health care. Therefore, Defendant and its associated medical facilities qualify as a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

91. Pursuant to Section 504, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

92. As set forth in the foregoing allegations about the Plaintiff's treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Defendant has discriminated against and continues to discriminate against Plaintiff solely on the basis of her disability by denying her meaningful access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

93. As set forth in the foregoing allegations about Plaintiff's treatment by and interactions with Defendant and its agents and medical personnel operating within its facility,

Defendant further discriminated against Plaintiff by: 1) failing to ensure adequate and effective communication with Plaintiff through the specific provision of qualified, in-person sign language interpreters; 2) failing to ensure adequate and effective communication with Plaintiff through VRI systems that functioned properly; 3) requiring Plaintiff to rely upon ineffective and inadequate means of communication including VRI systems, malfunctioning VRI systems, passing of handwritten notes, verbal gestures and/or lip reading.

94. Defendant's violation of its obligations and the Plaintiff's rights under the Rehabilitation Act and its implementing regulations has caused substantial damages, suffering, loss and harm to Plaintiff, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms.

95. Plaintiff is therefore entitled to seek and recover all appropriate compensatory damages for the injuries and losses she sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

96. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

97. Defendant's actions and omissions resulting in harms to Plaintiff were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiff under federal and state law and the substantial risk of serious and material harms to Plaintiff.  Therefore, to the extent the courts were to determine that punitive damages were recoverable under the Rehabilitation Act, Defendant's actions would warrant the imposition of punitive or exemplary damages to punish the Defendant for its wrongful conduct and to deter other similarly situated persons or entities from similar future conduct.

**COUNT 2: VIOLATIONS OF THE ARIZONANS WITH DISABILITIES ACT**

98. Plaintiff repeats and realleges all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

99. At all times relevant to this action, the Arizonans with Disabilities Act (AzDA), A.R.S. § 41-1492, *et seq.*, has been in full force and effect and has applied to Defendant's

13

conduct.

100. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activities of hearing and speaking and is a qualified individuals with a disability within the meaning of the AzDA, A.R.S. §§ 41-1492(6) and (8)(a).

101. At all times relevant to this action, Defendant's facility at which Plaintiff was served was and is a place of public accommodation within the meaning of AzDA, A.R.S. § 41-1492(11).

102. The AzDA, A.R.S. § 41-1492.02(A), states that "[n]o individual may be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation."

103. Discrimination under the AzDA includes any "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of reasonable modifications in policies, practices or procedures or auxiliary aids and services." A.R.S. § 41-1492.02(G)(3).

104. As set forth in the foregoing allegations about the Plaintiff's treatment by and interactions with Defendant and its agents and medical personnel operating within its facility, Defendant has discriminated against and continues to discriminate against Plaintiff solely on the basis of her disability by denying her meaningful access to the services, programs, and benefits the Defendant offers to other individuals, by failing and refusing to modify the Defendant's policies, procedures and practices regarding reliance on VRI systems and refusal to provide live, on-site Sign Language interpreters, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of the AzDA and the Plaintiff's rights thereunder.

105. As set forth in the foregoing allegations about Plaintiff's treatment by and interactions with Defendant and its agents and medical personnel operating within its facility,

Defendant specifically discriminated against Plaintiff by: 1) failing to ensure adequate and effective communication with Plaintiff through the specific provision of qualified, in-person sign language interpreters; 2) failing to ensure adequate and effective communication with Plaintiff through VRI systems that functioned properly; and 3) requiring Plaintiff to rely upon ineffective and inadequate means of communication including VRI systems, malfunctioning VRI systems, passing of handwritten notes and/or verbal gestures.

106. Discrimination under the AzDA also includes, "[a] failure to make reasonable modifications in policies, practices or procedures, if these modifications are necessary to afford these goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making these modifications would fundamentally alter the nature of these goods, services, facilities, privileges, advantages or accommodations." A.R.S. § 41-1492.02(G)(2).

107. Upon information and belief, Defendant has a policy of using VRI except in certain discrete situations.

108. As set forth in the foregoing allegations about the Plaintiff's treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Plaintiff requested reasonable accommodations to Defendant's VRI policy and/or Defendant had reason to know of Plaintiff's disability and inability to request an accommodation, Plaintiff needed a reasonable accommodation, and Defendant denied Plaintiff a reasonable accommodation, which resulted in Plaintiff being harmed.

109. Defendant's violation of its obligations and the Plaintiff's rights under the AzDA has caused substantial damages, suffering, loss and harm to Plaintiff, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms.

110. Plaintiff is therefore entitled to seek and recover all appropriate compensatory damages for the injuries and losses she sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, including as allowed pursuant to A.R.S. § 41-1492.09.

111. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to A.R.S. § 41-1492.09 and/or as otherwise provided at law.

**COUNT 3: VIOLATIONS UNDER AFFORDABLE CARE ACT SECTION 1557**

112. Plaintiff repeats and realleges all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

113. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 was in full force and effect and applied to the Defendant's conduct.

114. At all times relevant to this action, Section 1557, 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

115. At all times relevant to this action, Plaintiff is substantially limited in the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 U.S.C. § 18116.

116. At all times relevant to this action, such Plaintiff's primary language for communication was American Sign Language and not English; and such Plaintiff had limited ability to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

117. At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

118. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 U.S.C. § 18116.

119. Defendant has discriminated against Plaintiff solely on the basis of her disability and her limited English proficiency by denying her meaningful access to the services, programs,

and benefits the Defendant offers to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1557, 42 U.S.C. § 18116.

120. Defendant discriminated against Plaintiff by failing to ensure effective communication through the providing of qualified sign language interpreters on-site and/or through VRI machines that worked.

121. On information and belief, the refusal to offer qualified on-site ASL interpreter services is as a result of a policy or practice of Defendant to prohibit or impede the use of on-site qualified sign language interpreters without regard to whether VRI services will provide effective communication.

122. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

123. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief against the Defendant:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the Arizonans with Disabilities Act;

B. Award to Plaintiff:

  i. compensatory damages pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. §

18116, and the Arizonans with Disabilities Act sufficient to fully remedy all damages, suffering, injury and losses caused to Plaintiff by Defendant;

ii. to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish Defendant and to deter similarly situated persons or entities from similar future conduct;

iii. reasonable costs and attorneys' fees pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA;

iv. interest on all amounts at the highest rates and from the earliest dates allowed by law;

v. any and all other relief that this Court finds just, necessary and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

RESPECTFULLY SUBMITTED this 21st day of March, 2019.

BASKIN RICHARDS PLC

/s/ William A. Richards
William A. Richards
Peter A. Silverman
Austin J. Miller
2901 N. Central Avenue, Suite 1150
Phoenix, AZ  85012

AND

EISENBERG & BAUM, L.L.P.
Eric Baum, Esq.
Andrew Rozynski, Esq.
24 Union Square East
Fourth Floor
New York, NY 10003
*Attorneys for Plaintiffs*