Eric Baum NY#2591618 (Pro Hac Vice To Be Filed)
Andrew Rozynski NY#5054465 (Pro Hac Vice To Be Filed)
**EISENBERG & BAUM, LLP**
24 Union Square East
Fourth Floor
New York, NY 10003
Telephone No. 212-353-8700
Facsimile No. 212-353-1708
E-mail: ebaum@EandBLaw.com
          arozynski@EandBLaw.com

William A. Richards #013381
Peter A. Silverman #020679
Austin J. Miller #033322
**BASKIN RICHARDS PLC**
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7979
Facsimile No. 602-595-7800
E-mail: brichards@baskinrichards.com
          psilverman@baskinrichards.com
          amiller@baskinrichards.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ella Mae Hammack, James Allen, Kathy Allen, Donald Winant, Marilyn Winant, and Brenda Tress, | Case No.  CV-19-01890-PHX-JJT |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | |
| Scottsdale Healthcare Hospitals d/b/a HonorHealth Deer Valley Medical Center, f/k/a John C. Lincoln Deer Valley Hospital, | |
| Defendant. | |

Plaintiffs Ella Mae Hammack, James Allen, Kathy Allen, Donald Winant, Marilyn

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

Winant, and Brenda Tress ("Plaintiffs") bring this action, by and through their undersigned counsel, Eisenberg & Baum, LLP (pro hac vice application to be filed), and Baskin Richards PLC, and for their claims against Defendant Scottsdale Healthcare Hospitals doing business as HonorHealth Deer Valley Medical Center, formerly known as John C. Lincoln Deer Valley Hospital ("HonorHealth" or "Defendant"), hereby allege as follows:

## PRELIMINARY STATEMENT

1.     Plaintiffs are deaf individuals who communicate primarily in American Sign Language ("ASL"), which is their expressed, preferred, and most effective means of communication.  Defendant, HonorHealth, discriminated against Plaintiffs by refusing to provide auxiliary aids and services despite their requests for effective communication. Defendant discriminated against Plaintiffs by failing to provide on-site ASL interpreters when necessary, by providing malfunctioning Video Remote Interpreting ("VRI"[1]) systems, by failing to adequately train its personnel in the use of VRI systems, and by requiring Plaintiffs to rely upon other means of communication, including passing of notes and/or other methods that are inadequate for Plaintiffs' participation in their medical treatment and the medical treatment of their spouses.  Plaintiffs seek declaratory, injunctive, and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* and its implementing regulation, 28 C.F.R. Part 36; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulation, 45 C.F.R. Part 84; Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C.  § 18116; the Arizonans with Disabilities Act ("AzDA"), A.R.S. § 41-1492, *et seq.*, and other state and federal common law rights.

2.     Defendant has demonstrated and continues to demonstrate that Defendant's staff is not properly trained regarding how to identify when live, in-person interpreter services are required for effective communication with Deaf patients and their companions, and when other

---

[1]  Video remote interpreting is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or off-site interpreter.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

forms of communication, including VRI technology, the passing of written notes, or lip reading offer inadequate and ineffective communication for a deaf patient or his deaf companion.

3.      Defendant has similarly demonstrated that Defendant's staff is not properly trained regarding how to utilize or maintain VRI systems or fix malfunctioning VRI systems. This lack of training resulted in delays and failures to communicate with Plaintiffs in critical medical care situations. As a result of these delays and failures, Plaintiffs received care and service that was objectively substandard and that was not equal to the care and service provided to hearing patients and hearing companions of patients.

4.      Upon information and belief, despite being put on notice that problems with VRI resulted in ineffective communication with Plaintiffs, Defendant continues to wrongfully insist that VRI systems or other inadequate forms of communication be utilized for Plaintiffs as a substitute for qualified, in-person ASL interpreters.

5.      Plaintiffs bring suit to address these discriminatory practices, obtain relief against further, future discrimination, and obtain compensation for the damages caused by Defendant's discriminatory and unlawful policies, procedures and practices.

## THE PARTIES

6.      Defendant Scottsdale Healthcare Hospitals is an Arizona non-profit corporation registered and doing business in the State of Arizona.

7.      Around January 1, 2015, John C. Lincoln Health Network merged into Scottsdale Healthcare Hospitals to create the entity known as HonorHealth, a tradename for Scottsdale Healthcare Hospitals.

8.      At all times hereinafter mentioned, Defendant Scottsdale Healthcare Hospitals doing business as HonorHealth Deer Valley Medical Center, formerly known as John C. Lincoln Deer Valley Hospital was and is still licensed and doing business in the State of Arizona, with a principal place of business in Phoenix, Arizona.

9.      HonorHealth operates hospitals, specialty medical centers, surgery centers and outpatient facilities.  The company operates facilities throughout the Phoenix metropolitan area.

10.     Upon information and belief, HonorHealth runs five hospitals in Phoenix and

3

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

Scottsdale and more than 70 primary, specialty, and immediate care locations. https://www.honorhealth.com/company.

11.     HonorHealth's Arizona hospital facilities include HonorHealth Deer Valley Medical Center, formerly known as John C. Lincoln Deer Valley Hospital ("Deer Valley Hospital"), which is located at or near 19829 North 27th Avenue, Phoenix, Arizona, 85027, and whose actions and omissions give rise to claims in this matter.

12.     Deer Valley Hospital is a place of public accommodation as defined in A.R.S. § 41-1492(11)(f) and HonorHealth is a recipient of federal financial assistance. Thus, HonorHealth is subject to the requirements of Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA.

13.     On information and belief, HonorHealth had sufficient financial resources to afford all aids and services necessary to provide effective communication to Plaintiffs.

14.     Defendant's website acknowledges the importance of patient communication at HonorHealth.  It states, "HonorHealth focuses on you. Physicians and staff:

- Take the time to understand your unique needs.

- Engage you in conversations about health because your input is valuable.

- Are never too busy to go beyond what's expected to offer a helping hand."

https://www.honorhealth.com/company.

15.     Plaintiff Ella Mae Hammack is an individual who at all material times resided in Maricopa County, Arizona.

16.     Plaintiff is profoundly Deaf and communicates primarily in ASL, and is substantially limited in the major life activities of hearing and speaking within the meaning of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA.

17.     Plaintiff Ella Mae Hammack was a companion of her husband while he was a patient at HonorHealth's Deer Valley Hospital in March 2017, May 2017, September 2017, October 2017, and November 2017.

18.     Plaintiff Ella Mae Hammack was a companion to her now-deceased husband, Bill

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

Hammack, at HonorHealth, where she and her husband were denied appropriate auxiliary aids and services for their disabilities despite repeated requests by Plaintiff and Mr. Hammack to facilitate effective communication between them and HonorHealth's agents, employees, and/or medical staff during Mr. Hammack's medical treatment and care.

19.     Plaintiffs James and Kathy Allen are married individuals who have at all material times hereto resided in Maricopa County, Arizona.

20.     Plaintiffs James and Kathy Allen are profoundly deaf and communicate primarily in ASL, and are substantially limited in the major life activities of hearing and speaking within the meaning of the ADA, the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA.

21.     Plaintiff James Allen was a patient at HonorHealth's Deer Valley Hospital in September 2018, where he and his wife were denied appropriate auxiliary aids and services for their disabilities despite repeated requests to facilitate effective communication between them and HonorHealth's agents, employees, and/or medical staff during Mr. Allen's medical treatment and care.

22.     Plaintiffs Donald and Marilyn Winant are married individuals who have at all materials times hereto resided in Maricopa County, Arizona.

23.     Plaintiffs Donald and Marilyn Winant are profoundly deaf and communicate primarily in ASL, and are substantially limited in the major life activities of hearing and speaking within the meaning of the ADA, the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA.

24.     Plaintiff Donald Winant was a patient at HonorHealth's Deer Valley Medical Center in October 2018 and February 2019, where he and his wife were denied appropriate auxiliary aids and services for their disabilities despite repeated requests to facilitate effective communication between them and HonorHealth's agents, employees, and/or medical staff during Mr. Winant's medical treatment and care.

25.     Plaintiff Brenda Tress is an individual who has at all material times hereto resided in Maricopa County, Arizona.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

26.     Plaintiff Brenda Tress is profoundly deaf and communicates primarily in ASL, and is substantially limited in the major life activities of hearing and speaking within the meaning of the ADA, the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA.

27.     Plaintiff Brenda Tress was a patient at HonorHealth's Deer Valley Hospital in December 2017, where she was denied appropriate auxiliary aids and services for her disability despite repeated requests to facilitate effective communication between her and HonorHealth's agents, employees, and/or medical staff during her medical treatment and care.

28.     Throughout visits by Plaintiffs at HonorHealth between March 2017 and September 2018, Defendant repeatedly denied Plaintiffs effective communication as required by law. Defendant HonorHealth's denial of effective communication for Plaintiffs include providing Plaintiffs with malfunctioning VRI systems and/or repeatedly denying their requests for on-site qualified ASL interpreters.

29.     When Plaintiffs attempted to utilize VRI equipment at Defendant's Deer Valley Hospital, it often stopped, became pixilated, or lacked visibility, leaving communication unreliable or nonexistent. Instead of providing an on-site ASL interpreter when the VRI equipment did not work, Defendant chose to do nothing at all or to force Plaintiffs to rely on other inadequate methods of communication, resulting in ineffective communication with Plaintiffs.

30.     Plaintiffs put Defendant HonorHealth on notice that the VRI systems at Defendant's Deer Valley Hospital did not provide effective communication. Despite this notice, Defendant continued to wrongfully mandate the use of VRI instead of on-site, qualified ASL interpreters.

## JURISDICTION & VENUE

31.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under federal law.  In addition, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

Defendant has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced, the parties all resided within this District at all material times, and the acts and omissions giving rise to the causes of action asserted herein occurred in this District.

### STATEMENT OF FACTS AS TO PLAINTIFF ELLA MAE HAMMACK

33.     Plaintiff Ella Mae Hammack is profoundly deaf and requires a qualified sign language interpreter to communicate effectively in medical settings.

34.     Bill Hammack was Ms. Hammack's husband until his passing in January 2018.

35.     Mr. Hammack was profoundly deaf and required a qualified sign language interpreter to communicate effectively in medical settings.

36.     On March 22, 2017, Mr. and Ms. Hammack went to the Emergency Room at Defendant's Deer Valley Hospital because Mr. Hammack was experiencing symptoms related to pneumonia.

37.     When Ms. Hammack and Mr. Hammack arrived at the hospital, they requested a qualified, on-site ASL interpreter for effective communication.

38.     However, Defendant's staff denied their request, and instead provided a Video Remote Interpreting ("VRI") system, which staff had a difficult time starting up and which experienced persistent screen freezing and choppiness.

39.     In addition to the technical problems with the VRI system, at one point when a VRI connection was made, the interpreter was unskilled and appeared to be using a form of home signs or gestures, which was unsuccessful for the Hammacks.

40.     Defendant's staff attempted to explain to Mr. and Ms. Hammack that Mr. Hammack was experiencing a problem with his esophagus, but they were unable to understand because of the lack of effective communication.

41.     Mr. Hammack was admitted to the hospital, and throughout his stay, Defendant's staff attempted to use the VRI system unsuccessfully.

42.     The Hammacks continued to request a qualified, on-site ASL interpreter, but none was ever provided.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

43.     At one point during Mr. Hammack's stay at Deer Valley Hospital, a social worker met with the Hammacks.

44.     At this meeting, Ms. Hammack had to use FaceTime to call her son, who lives in Wisconsin, to help interpret for the Hammacks.

45.     On March 24, 2017, Mr. Hammack was discharged from Deer Valley Hospital.

46.     At Mr. Hammack's discharge, Defendant's staff continued to rely on VRI to attempt to communicate his discharge instructions.

47.     However, the Hammacks were unable to use the VRI system effectively and were forced to attempt to read the discharge instructions in English.

48.     On May 7, 2017, Mr. and Ms. Hammack went back to Deer Valley Hospital because Mr. Hammack was experiencing symptoms of pneumonia.

49.     Upon arriving at the hospital, Mr. and Ms. Hammack requested a qualified, on-site ASL interpreter for effective communication.

50.     Defendant's staff again denied their requests and did not provide a qualified, on-site ASL interpreter.

51.     Instead, Defendant's staff attempted to utilize a VRI system, which experienced constant screen freezing and was unsuccessful.

52.     On information and belief, Defendant's staff found a concerning spot on Mr. Hammack's kidney after taking an X-Ray.

53.     Defendant's staff did not inform Mr. or Ms. Hammack about this spot until months later.

54.     On May 9, 2017, Mr. Hammack was discharged from Deer Valley Hospital.

55.     On September 22, 2017, Mr. and Ms. Hammack went back to Deer Valley Hospital because Mr. Hammack was again experiencing pneumonia-related symptoms.

56.     Defendant's staff subjected Mr. Hammack to several tests and procedures during this visit, including a colonoscopy, a CT scan, and a kidney biopsy.

57.     Defendant's staff denied their request and did not provide a qualified, on-site ASL interpreter.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

58.     Instead, Defendant's staff brought out a VRI system to attempt communication with Mr. and Ms. Hammack.

59.     The VRI system experienced technical difficulties and did not provide effective communication for Mr. or Ms. Hammack.

60.     On or around October 6, 2017, Mr. Hammack was discharged from Deer Valley Hospital.

61.     Defendant's staff finally provided an on-site interpreter for Mr. Hammack's discharge instructions.

62.     On October 28, 2017, Mr. and Ms. Hammack went back to Deer Valley Hospital because Mr. Hammack was suffering from hemorrhoids.

63.     Defendant's staff denied their request and did not provide a qualified, on-site ASL interpreter for Mr. and Ms. Hammack.

64.     Shortly after Mr. Hammack was admitted, Defendant's staff performed a colonoscopy on him.

65.     After the procedure, Mr. Hammack was moved to the intensive care unit ("ICU") and was put on a breathing machine.

66.     Defendant's staff did not tell Ms. Hammack that her husband was moved to the ICU, and Ms. Hammack found out only after going to Mr. Hammack's regular hospital room and not seeing him there.

67.     Mr. Hammack stayed in the ICU for approximately one week.

68.     During this time, Defendant's staff failed to provide either an on-site ASL interpreter or a VRI system for effective communication.

69.     After Mr. Hammack was moved out of the ICU and into a regular hospital room, Defendant's staff brought a VRI system to Mr. Hammack's room to attempt communication with the Hammacks.

70.     However, the VRI system experienced multiple problems, including screen freezing.

71.     Additionally, the screen for the VRI system was too small and Ms. Hammack

could not see the interpreter's signs.

72.     After experiencing these issues with two separate doctors who came to see Mr. Hammack, Defendant's staff finally provided an on-site ASL interpreter for the Hammacks, who was present during limited times for the remainder of Mr. Hammack's visit.

73.     On November 8, 2017, Mr. Hammack was discharged from Deer Valley Hospital.

74.     Although Defendant's staff, agents, and medical personnel knew or reasonably should have known that Ms. Hammack is Deaf and requires the use of qualified on-site ASL interpretation services through Ms. Hammack's interactions with Defendant, Defendant nonetheless refused to provide an on-site ASL interpreter for Ms. Hammack on multiple occasions, including when her husband was in the ICU.

75.     Rather than providing an ASL interpreter, Defendant continued to rely upon ineffective communications through a faulty VRI system and handwritten notes.

76.     Ms. Hammack thus remained confused and concerned about Mr. Hammack's condition.

77.     Defendant's failure to provide on-site, qualified sign language interpreters made Mr. Hammack's treatment and hospital experiences more difficult and caused harm because it prevented effective communication between Ms. Hammack and Defendant's staff.

78.     As a result of Defendant's failure to ensure effective communication with Ms. Hammack, Ms. Hammack received service that was objectively substandard and that is inferior to service provided to companions who can hear.

79.     Defendant intentionally discriminated against Ms. Hammack and acted with deliberate indifference to her communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

## STATEMENT OF FACTS AS TO PLAINTIFFS JAMES ALLEN AND KATHY ALLEN

80.     Plaintiff James Allen is profoundly deaf and requires a qualified sign language interpreter to communicate effectively in medical settings.

81.     Plaintiff Kathy Allen is profoundly deaf and requires a qualified sign language

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

interpreter to communicate effectively in medical settings.

82.    Plaintiffs James Allen and Kathy Allen are married to each other.

83.    On September 8, 2018, Mr. and Ms. Allen went to the Emergency Room at Defendant's Deer Valley Hospital because Mr. Allen was experiencing numbness and problems with his balance.

84.    When Mr. and Ms. Allen arrived at the hospital, they requested a qualified, on-site ASL interpreter for effective communication.  Mr. and Mrs. Allen required a qualified, on-site ASL interpreter for effective communication.

85.    However, Defendant's staff denied their request, and instead provided a VRI system.

86.    Defendant's staff had a difficult time setting up the VRI system and had to call technical support, and Mr. and Ms. Allen had to wait around one hour before staff could establish a connection.

87.    Defendant's staff performed tests on Mr. Allen, including a CT scan.

88.    Defendant's staff tried to explain to Mr. and Ms. Allen through the VRI system that Mr. Allen had a spasm.

89.    Defendant's staff concluded that Mr. Allen did not need any further treatment, and discharged him from the Emergency Room.

90.    The next day, on September 9, 2018, Defendant's staff called Mr. Allen and told him that he needed to come back to the hospital for further evaluation.

91.    Mr. and Ms. Allen went back to Defendant's Deer Valley Hospital that day.

92.    Upon their arrival, Mr. and Ms. Allen requested a qualified, on-site ASL interpreter for effective communication, which is what they required for effective communication

93.    However, Defendant's staff denied their request, and instead provided a VRI system.

94.    Defendant's staff again had a difficult time setting up the VRI system, and Mr. and Ms. Allen had to wait over an hour before staff could establish a connection.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

95.     Although the VRI system initially functioned properly, it soon began to experience technical issues such as screen freezing. The VRI system failed to provide effective communication.

96.     When Mr. Allen was seen by a doctor, the doctor attempted to use handwritten notes to communicate with Mr. and Ms. Allen.

97.     However, these notes were ineffective, and the doctor did not give Mr. and Ms. Allen an in-depth explanation of what tests they would perform on Mr. Allen.

98.     Sometime after Mr. and Ms. Allen arrived at the hospital, Defendant's staff performed a CT scan and MRI on Mr. Allen, and confirmed that he had, in fact, had a stroke.

99.     At one point while Mr. and Ms. Allen were in Mr. Allen's hospital room, Defendant's staff turned off the VRI system and placed it in the corner of the room.

100.    Defendant's staff continued to attempt communication through handwritten notes on paper and on the white board in Mr. Allen's hospital room. This failed to provide the Allen's effective communication.

101.    Defendant's staff did not use VRI to explain Mr. Allen's test results. The Defendant did not, therefore, provide the Allen's effective communication regarding explanation of Mr. Allen's test results.

102.    Defendant's staff also did not use VRI for Mr. Allen's discharge on September 11, 2018, and instead relied on handwritten notes. Again, the Allen's did not obtain effective communication for the discharge communications and instructions.

103.    Although Defendant's staff, agents, and medical personnel knew or reasonably should have known that Mr. and Ms. Allen are deaf and required the use of qualified on-site ASL interpretation services throughout Mr. and Ms. Allen's interactions with Defendant, Defendant nonetheless refused to provide an on-site ASL interpreter for Mr. and Ms. Allen and thereby denied the Allen's effective communication and discriminated against them based on a disability.

104.    Rather than providing an ASL interpreter, Defendant continued to rely upon ineffective communications through a faulty VRI system and handwritten notes.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

105.    Mr. and Ms. Allen thus remained confused and concerned about Mr. Allen's condition, his diagnosis, his prognosis and his treatment alternatives.

106.    Given the proximity of Defendant's Deer Valley Hospital to their home, it is reasonably foreseeable that Mr. and Ms. Allen will again be a patient or a patient's companion at Deer Valley Hospital, or some other facility of Defendant.

107.    Based on Defendant's previous and repeated denials of effective communication for Plaintiffs, and its repeated denials of effective communication to other deaf patients, it is reasonably foreseeable that Defendant will deny Mr. and Ms. Allen effective communication again in the future.

108.    Accordingly, Mr. and Ms. Allen are aware of discriminatory barriers to access at Defendant's facilities and are thereby deterred from accessing Defendant's healthcare services because of the discrimination they have faced and expect to face in the future, even though they would do so if the discriminatory acts ceased. Therefore, Defendant's actions warrant the imposition of injunctive relief to ensure the cessation of Defendant's wrongful conduct.

109.    Defendant's failure to provide on-site, qualified sign language interpreters made Mr. Allen's treatment and hospital experiences more difficult and caused harm because it prevented effective communication between Mr. and Ms. Allen and Defendant's staff.

110.    As a result of Defendant's failure to ensure effective communication with Mr. and Ms. Allen, Mr. and Ms. Allen received care and service that was objectively substandard and that is inferior to care and service provided to patients and companions who can hear.

111.    Defendant intentionally discriminated against Mr. and Ms. Allen and acted with deliberate indifference to their communication needs, causing them to endure humiliation, fear, anxiety, and emotional distress.

## STATEMENT OF FACTS AS TO PLAINTIFF BRENDA TRESS

112.    Plaintiff Brenda Tress is profoundly deaf and requires a qualified sign language interpreter to communicate effectively in medical settings.

113.    On December 2, 2017, Ms. Tress went to the Emergency Room at Defendant's Deer Valley Hospital because she was experiencing severe abdominal pain and a fever.

13

114.    When Ms. Tress arrived at the Emergency Room, she requested a qualified, on-site ASL interpreter for effective communication.  Thus, the Defendant knew of her need for a qualified, on-site ASL interpreter to obtain effective communication.

115.    However, Defendant's staff denied her request, and instead provided a VRI system, which experienced persistent technical issues including poor image quality.  The VRI system did not provide Ms. Tress effective communication.

116.    Ms. Tress's son, who is also deaf, came to visit Ms. Tress in the Emergency Room.

117.    Because of the issues with the VRI system, Defendant's staff used Ms. Tress's son to help facilitate communication between staff and Ms. Tress.

118.    Ms. Tress's son is not a certified sign language interpreter, and had never before acted as a sign language interpreter.

119.    At one point, Ms. Tress's son had to leave the hospital, leaving Ms. Tress with no one to help facilitate communication in person.

120.    During Ms. Tress's initial exam, Defendant's staff attempted to communicate with Ms. Tress through handwritten notes, which were ineffective because Ms. Tress was in pain and could not write well.

121.    Defendant's staff performed a CT scan and an X-ray exam on Ms. Tress.

122.    Defendant's staff did not explain what they were doing to Ms. Tress, or what Ms. Tress's test results were.  She therefore did not obtain effective communication as is normally provided to hearing patients regarding the testing conducted, the results thereof, and any diagnosis.

123.    Ms. Tress was prescribed medications, but she did not understand what they were because Defendant did not provide her effective communication regarding the medications.

124.    Later that day, Ms. Tress was admitted to the hospital for observation.

125.    During Ms. Tress's stay at Deer Valley Hospital, Defendant's staff continued to use VRI to attempt communication with Ms. Tress.

126.    On December 3, 2019, Ms. Tress was discharged from Defendant's Deer Valley

14

Hospital.

127.    Defendant's staff did not provide a qualified, on-site ASL interpreter to explain Ms. Tress's discharge instructions.   Again, then, Defendant denied Ms. Tress effective communication related to its services and discriminated against her based on her disability.

128.    Although Defendant's staff, agents, and medical personnel knew or reasonably should have known that Ms. Tress is Deaf and required the use of qualified on-site ASL interpretation services throughout Ms. Tress's interactions with Defendant, Defendant nonetheless refused to provide an on-site ASL interpreter for Ms. Tress and Defendant thereby denied Ms. Tress effective communication and discriminated against her based on her disability.

129.    Rather than providing an ASL interpreter, Defendant continued to rely upon ineffective communications through a faulty VRI system and handwritten notes.

130.    Ms. Tress thus remained confused and concerned about her condition, her diagnosis, her prognosis and any treatment options.

131.    Given the proximity of Defendant's Deer Valley Hospital to her home, it is reasonably foreseeable that Ms. Tress will again be a patient at Defendant's Deer Valley Hospital, or some other facility of Defendant.

132.    Based on Defendant's previous and repeated denials of effective communication for Ms. Tress, and its repeated denials of effective communication to other deaf patients, it is reasonably foreseeable that Defendant will deny Ms. Tress effective communication again in the future.

133.    Accordingly, Ms. Tress is aware of discriminatory barriers to access at Defendant's facilities and is thereby deterred from accessing Defendant's healthcare services because of the discrimination she has faced and expects to face in the future, even though she would do so if the discriminatory acts ceased. Therefore, Defendant's actions warrant the imposition of injunctive relief to ensure the cessation of Defendant's wrongful conduct.

134.    Defendant's failure to provide on-site, qualified sign language interpreters made Ms. Tress's treatment and hospital experiences more difficult and caused harm because it

15

prevented effective communication between Ms. Tress and Defendant's staff.

135.    As a result of Defendant's failure to ensure effective communication with Ms. Tress, Ms. Tress received care and service that was objectively substandard and that is inferior to care and service provided to patients who can hear.

136.    Defendant intentionally discriminated against Ms. Tress and acted with deliberate indifference to her communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

## STATEMENT OF FACTS AS TO PLAINTIFFS DONALD WINANT AND MARILYN WINANT

137.    Plaintiff Donald Winant is profoundly deaf and requires a qualified sign language interpreter to communicate effectively in medical settings.

138.    Plaintiff Marilyn Winant is profoundly deaf and requires a qualified sign language interpreter to communicate effectively in medical settings.

139.    Plaintiffs Donald Winant and Marilyn Winant are married to each other.

140.    On or about October 5, 2018, Mr. Winant presented at the Emergency Department at Defendant's Deer Valley Medical Center complaining of severe left sided abdominal pain and mid back pain.

141.    When Mr. Winant arrived at the emergency department with Mrs. Winant, Mr. Winant requested a live, onsite ASL interpreter but one was not provided.  Thus, Defendant knew of Mr. and Mrs. Winant's need for a qualified, on-site ASL interpreter to obtain effective communication and intentionally refused to provide one and thereby denied them effective communication.

142.    When Mr. Winant was seen and examined in the emergency department, Mrs. Winant was forced to interpret for her husband by trying to read the lips of hospital staff.  This deprived the Winants of effective communication and discriminated against them based on their disabilities.

143.    According to hospital records, Mr. Winant was admitted into the hospital for "sepsis due to cysteitis/pyelonephritis and left ureteral/renal stones."

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

144.   Mr. Winant would remain in the hospital until his discharge on or about October 12, 2018.

145.   Throughout Mr. Winant's stay, he and Mrs. Winant repeatedly requested a live, onsite ASL interpreter, but HonorHealth never provided one.

146.   Instead, hospital staff would sometimes try to use a VRI device. However, on several occasions it would not work, it was slow, or the picture was not clear. On other occasions hospital staff did not know how to operate the device.  Thus, Defendant denied the Winant's effective communication.

147.   Even when the VRI device was functioning, Mrs. Winant would have to interpret for her husband because he had difficulty seeing and interacting with the interpreter on the screen due to his poor eyesight.  On information and belief Defendant's staff knew or disregarded this issue and forced Mrs. Winant to have to interpret for her husband, again denying the Winant's their rights under federal and state law, refusing them effective communication, and discriminating against them based on a disability.

148.   On other occasions, hospital staff would try to communicate with Mr. Winant by writing notes, drawing pictures, having him read lips, and by making gestures.

149.   During his stay, Mr. Winant had two procedures in the operating room to remove his kidney stones. Mr. Winant also developed urosepsis between procedures which required admission to the intensive care unit.

150.   Without a live, onsite ASL interpreter, Mr. and Mrs. Winant were frustrated, confused, and scared.

151.   On or about February 23, 2019, Mr. Winant returned to the Emergency Department at Defendant's Deer Valley Medical Center because he was experiencing rectal pain.

152.   Mr. Winant requested a live, onsite ASL interpreter when he arrived but one was never provided. In addition, hospital records confirm that the charge nurse was unable to find a VRI machine.  The Defendant therefore denied Mr. Winant effective communication.

153.   A provider note from that morning states that Mr. Winant attempted to provide

the history of his illness, but was "limited due to patient being deaf and no interpreter."

154.   Mr. Winant underwent several tests and had multiple interactions with hospital staff without the aid of an interpreter and without access to effective communication.

155.   Hospital staff eventually found a VRI device. However, either staff did not know how to use the device or the device was not working until about the time that Mr. Winant was being discharged.   Again, then, Defendants denied the Winants access to effective communication.

156.   Although Defendant's staff, agents, and medical personnel knew or reasonably should have known that Mr. and Mrs. Winant are deaf and required the use of qualified on-site ASL interpretation services throughout their interactions with Defendant, Defendant nonetheless refused to provide an on-site ASL interpreter for Mr. and Mrs. Winant.  Defendant thereby denied the Winants effective communication and discriminated against them based on their disabilities.

157.   Rather than providing an ASL interpreter, Defendant continued to rely upon ineffective communications through a faulty VRI system, handwritten notes, and other ineffective methods.

158.   Mr. and Mrs. Winant thus remained confused and concerned about Mr. Winant's condition, his diagnosis, his prognosis and his treatment alternatives.

159.   Given the proximity of Defendant's Deer Valley Medical Center to their home, it is reasonably foreseeable that Mr. and Mrs. Winant will again be a patient or a patient's companion at Defendant's Deer Valley Medical Center, or some other facility of Defendant.

160.   Based on Defendant's previous and repeated denials of effective communication for Mr. and Mrs. Winant, and its repeated denials of effective communication to other deaf patients, it is reasonably foreseeable that Defendant will deny Mr. and Mrs. Winant effective communication again in the future.

161.   Accordingly, Mr. and Mrs. Winant are aware of discriminatory barriers to access at Defendant's facilities and are thereby deterred from accessing Defendant's healthcare services because of the discrimination they have faced and expect to face in the future, even

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

though they would do so if the discriminatory acts ceased. Therefore, Defendant's actions warrant the imposition of injunctive relief to ensure the cessation of Defendant's wrongful conduct.

162.    Defendant's failure to provide on-site, qualified sign language interpreters made Mr. Winant's treatment and hospital experiences more difficult and caused harm because it prevented effective communication between the Winants and Defendant's staff.

163.    As a result of Defendant's failure to ensure effective communication with Mr. and Mrs. Winant, Mr. and Mrs. Winant received care and service that was objectively substandard and that is inferior to care and service provided to patients and companions who can hear.

164.    Defendant intentionally discriminated against Mr. and Mrs. Winant and acted with deliberate indifference to their communication needs, causing them to endure humiliation, fear, anxiety, and emotional distress.

## STATEMENT OF FACTS AS TO ALL PLAINTIFFS

165.    Defendant's denial of effective communication during the medical treatment of Plaintiffs or Plaintiffs' family members caused Plaintiffs significant pain, suffering, and emotional distress. On information and belief, due to Defendant's refusal to provide effective communication, Plaintiffs did not meaningfully understand critical information about diagnoses, prognoses, medication and/or treatment options and lacked a full and complete understanding of the risks and benefits thereof.

166.    As alleged above, Plaintiffs repeatedly put Defendant's staff on notice that communication was not effective by alerting them of the inadequacy of VRI systems, the inadequacy of handwritten communications and to their need for qualified, on-site ASL interpreters.

167.    Despite such notice, Defendant failed and/or refused to provide qualified on-site ASL interpreters, failed and/or refused to ensure that VRI systems were appropriate for Plaintiffs' circumstances, failed and/or refused to ensure that available VRI systems were properly functioning, failed and/or refused to ensure that the Defendant's agents were properly trained and qualified in the use of the VRI systems, and failed and/or refused to fix VRI systems

that were not working properly, or failed and/or refused to understand the inadequacy of handwritten notes as a sole method of communication.

168.    Rather, Defendant knowingly limited Plaintiffs to the little communication they could achieve through a malfunctioning VRI, or through such inadequate methods as vague gestures or cryptic notes.

169.    Upon information and belief, Defendant is aware of its obligations under federal and state law to provide adequate and effective communication for Deaf, hard of hearing, and speech impaired individuals that visit its medical facilities as either patients or companions of patients.

170.    Also upon information and belief, Defendant and its agents, including those medical personnel attending Plaintiffs, were aware that the failure to provide adequate and effective communication to Plaintiffs could result in serious and harmful anxiety, confusion, lack of understanding, frustration, depression and other serious emotional or physical harms, and could prevent Plaintiffs from enjoying the right and ability to understand and participate in their medical care and the medical care of their family members.

171.    Upon information and belief, Defendant refuses to hire qualified on-site qualified ASL interpreters as a matter of policy at its hospital and other facilities, and insists upon communication through such inadequate means of communication as handwritten notes, gestures, lip reading, and/or VRI in all cases.

172.    Upon information and belief, HonorHealth informs its Deer Valley Hospital patients and companions of a right to access language assistance services in eighteen languages, none of which is ASL.

173.    Upon information and belief, the refusal to offer on-site, qualified, ASL interpreter services to Plaintiffs is the result of a policy or practice of Defendant to discourage the use of qualified on-site interpreters without regard to whether VRI services or other methods of communication will provide effective communication.

174.    Reliance by Deaf and hard of hearing and speech impaired individuals upon family members to interpret medical communications for them is unwise and dangerous. Such

20

family members are generally not trained to act as interpreters, particularly in medical and hospital settings. Family members often are untrained in accurately and precisely interpreting and conveying for and to the hearing impaired individual the complete and accurate content of medical communications.

175. In addition, family members are generally too personally and emotionally involved with the hearing impaired patient to act impartially and with the emotional detachment that is necessary for qualified sign language interpreters, particularly in medical settings and communications.

176. As a result of Defendant's failure to ensure effective communication with Plaintiffs, Plaintiffs received service that was objectively substandard and that is inferior to service provided to patients and patient family members who can hear.

177. Furthermore, despite its knowledge and understanding of its legal obligations to provide adequate and effective communication to Plaintiffs, and its knowledge and understanding that the failure to provide adequate and effective communication to Plaintiffs could and would result in denial of the Plaintiffs' rights under state and federal law and in serious and material harm and injury to Plaintiffs, Defendant knowingly, intentionally and maliciously failed and/or refused to provide adequate and effective communication to Plaintiffs in an intentional and/or deliberately indifferent violation of Plaintiffs' rights.

178. Defendant's actions and omissions resulting in harms to Plaintiffs were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiffs under federal and state law and the substantial risk of serious and material harms to Plaintiffs. Therefore, to the extent allowed by any applicable law, Defendant's actions would warrant the imposition of punitive or exemplary damages to punish the Defendant for its wrongful conduct and to deter other similarly situated persons or entities from similar future conduct.

## COUNT 1: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

179. Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

180.    At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 has been in full force and effect and has applied to the Defendant's conduct.

181.    At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to the Defendant's conduct.

182.    At all times relevant to this action, Plaintiffs have had substantial impairment to the major life activities of hearing and speaking within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9), and its implementing regulations at 45 C.F.R. § 84.3(j).  Accordingly, they are individuals with a disability as defined under the Rehabilitation Act.

183.    At all times relevant to this action, Plaintiffs were qualified to receive services through Defendant's facilities.

184.    Upon information and belief, at all times relevant to this action, Defendant has received federal financial assistance, including Medicaid reimbursements, and has been principally engaged in the business of providing health care. Therefore, Defendant and its associated medical facilities qualify as a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

185.    Pursuant to Section 504, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

186.    As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Defendant has discriminated against and continues to discriminate against Plaintiffs solely on the basis of their disabilities by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

187.    As set forth in the foregoing allegations about Plaintiffs' treatment by and

interactions with Defendant and its agents and medical personnel operating within its facility, Defendant further discriminated against Plaintiffs by: 1) failing to ensure adequate and effective communication with Plaintiffs through the specific provision of qualified, in-person sign language interpreters; 2) failing to ensure adequate and effective communication with Plaintiffs through VRI systems that functioned properly; 3) requiring Plaintiffs to rely upon ineffective and inadequate means of communication including VRI systems, malfunctioning VRI systems, passing of handwritten notes, verbal gestures and/or lip reading.

188.    Defendant's violation of its obligations and the Plaintiffs' rights under the Rehabilitation Act and its implementing regulations has caused substantial damages, suffering, loss and harm to Plaintiffs, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms. Upon information and belief, Defendant's violations of its obligations and Plaintiffs' rights may have also caused the exacerbation, increase, extension, or delay in the resolution of serious physical medical conditions, which itself has also caused additional emotional and physical harm, suffering and injury to Plaintiffs.

189.    As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur again with Plaintiffs and other deaf patients, their companions and family members.

190.    Plaintiffs are therefore entitled to seek and recover all appropriate compensatory damages for the injuries and losses they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

191.    Plaintiffs are further entitled to an award of attorney's fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

192.    Defendant's actions and omissions resulting in harms to Plaintiffs were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiffs under federal and state law and the substantial risk of serious and material harms to Plaintiffs.  Therefore, to the extent the courts were to determine that punitive damages were recoverable under the

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

Rehabilitation Act, Defendant's actions would warrant the imposition of punitive or exemplary damages to punish the Defendant for its wrongful conduct and to deter other similarly situated persons or entities from similar future conduct.

## COUNT 2: VIOLATIONS OF THE ARIZONANS WITH DISABILITIES ACT

193.   Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

194.   At all times relevant to this action, the Arizonans with Disabilities Act (AzDA), A.R.S. § 41-1492, *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

195.   At all times relevant to this action, Plaintiffs have had substantial impairment to the major life activities of hearing and speaking and are qualified individuals with a disability within the meaning of the AzDA, A.R.S. §§ 41-1492(6) and (8)(a).

196.   At all times relevant to this action, Defendant's facility at which Plaintiffs were served or treated was and is a place of public accommodation within the meaning of AzDA, A.R.S. § 41-1492(11).

197.   The AzDA, A.R.S. § 41-1492.02(A), states that "[n]o individual may be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation."

198.   Discrimination under the AzDA includes any "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of reasonable modifications in policies, practices or procedures or auxiliary aids and services." A.R.S. § 41-1492.02(G)(3).

199.   As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facility, Defendant has discriminated against and continues to discriminate against Plaintiffs solely on

the basis of their disability by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals, by failing and refusing to modify the Defendant's policies, procedures and practices regarding reliance on VRI systems and refusal to provide live, on-site Sign Language interpreters, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of the AzDA and the Plaintiffs' rights thereunder.

200.   As set forth in the foregoing allegations about Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facility, Defendant specifically discriminated against Plaintiffs by: 1) failing to ensure adequate and effective communication with Plaintiffs through the specific provision of qualified, in-person sign language interpreters; 2) failing to ensure adequate and effective communication with Plaintiffs through VRI systems that functioned properly; and 3) requiring Plaintiffs to rely upon ineffective and inadequate means of communication including VRI systems, malfunctioning VRI systems, passing of handwritten notes and/or verbal gestures.

201.   Discrimination under the AzDA also includes, "[a] failure to make reasonable modifications in policies, practices or procedures, if these modifications are necessary to afford these goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making these modifications would fundamentally alter the nature of these goods, services, facilities, privileges, advantages or accommodations." A.R.S. § 41-1492.02(G)(2).

202.   Upon information and belief, Defendant has a policy of using VRI except in certain discrete situations.

203.   As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Plaintiffs requested reasonable accommodations to Defendant's VRI policy and/or Defendant had reason to know of Plaintiffs' disability and inability to request an accommodation, Plaintiffs needed a reasonable accommodation, and Defendant denied Plaintiffs a reasonable accommodation, which resulted in Plaintiffs being harmed.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

204.     Defendant's violation of its obligations and the Plaintiffs' rights under the AzDA has caused substantial damages, suffering, loss and harm to Plaintiffs, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms. Upon information and belief, Defendant's violations of its obligations and Plaintiffs' rights may have also caused the exacerbation, increase, extension, or delay in the resolution of serious medical conditions, which itself has also caused emotional and physical harm, suffering and injury to Plaintiffs.

205.     As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiffs and/or additional deaf persons.

206.     Plaintiffs are therefore entitled to seek and recover all appropriate compensatory damages and injunctive relief for the injuries and losses they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, including as allowed pursuant to A.R.S. § 41-1492.09.

207.     Plaintiffs are further entitled to an award of attorney's fees, costs, and disbursements pursuant to A.R.S. § 41-1492.09 and/or as otherwise provided at law.

## COUNT 3:  VIOLATIONS UNDER AFFORDABLE CARE ACT SECTION 1557

208.     Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

209.     At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 was in full force and effect and applied to the Defendant's conduct.

210.     At all times relevant to this action, Section 1557, 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

211.     At all times relevant to this action, Plaintiffs are substantially limited in the major life activities of hearing and speaking, and were individuals with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 U.S.C. § 18116.

212.     At all times relevant to this action, such Plaintiffs' primary language for communication was American Sign Language and not English; and such Plaintiffs had limited

ability to read, write, speak, or understand English, and were individuals with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

213.    At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

214.    Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 U.S.C. § 18116.

215.    Defendant has discriminated against Plaintiffs solely on the basis of their disability and their limited English proficiency by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1557, 42 U.S.C. § 18116.

216.    Defendant discriminated against Plaintiffs by failing to ensure effective communication through the providing of qualified sign language interpreters on-site and/or through VRI machines that worked.

217.    On information and belief, the refusal to offer qualified on-site ASL interpreter services is as a result of a policy or practice of Defendant to prohibit or impede the use of on-site qualified sign language interpreters without regard to whether VRI services will provide effective communication.

218.    As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur again with Plaintiffs and other deaf patients and family members.

219.    Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

220.    Plaintiffs are further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## CLAIM 4: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

221.    Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

222.    At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, *et seq*. has been in full force and effect and has applied to Defendant's conduct.

223.    At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

224.    At all times relevant to this action, Plaintiffs have been substantially limited in the major life activities of hearing and speaking. Accordingly, they are considered individuals with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

225.    Defendant owns, leases, and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

226.    Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

227.    Title III of the ADA defines discrimination to include denying participation or offering unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); *see also* 28 C.F.R. § 36.202.

228.    Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied

services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ." 42 U.S.C. § 12182(b)(2)(A)(iii).

229.    Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

230.    Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individual with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

231.    Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

232.    Pursuant to Title III of the ADA and its implementing regulations, in order to be effective, the type of auxiliary aid or service provided by the public accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

233.    Pursuant to Title III of the ADA and its implementing regulations, when a public accommodation provides VRI service, it must ensure that the service includes all the following criteria: "(1) [r]eal-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) [a] sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position; (3) [a] clear, audible transmission of voices; and (4) [a]dequate

training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." 28 C.F.R. § 36.303(f).

234.    Based on all of the foregoing allegations confirming the Defendant's treatment and interactions with the Plaintiffs, Defendant discriminated against the individual Plaintiffs by: (1) denying Plaintiffs an equal opportunity to participate in and benefit from Defendant's goods, services, facilities, privileges, advantages, and/or accommodations, in violation of 42 U.S.C. § 12182(b)(1)(A); (2) failing to ensure adequate and effective communication for Deaf Plaintiffs through the provision of on-site qualified sign language interpreters, in violation of 42 U.S.C. § 12182(b)(2)(A); (3) failing to ensure adequate and effective communication for Deaf Plaintiffs by relying on VRI systems, including systems that were not fully or adequately functioning, or other means of communication other than qualified sign language interpreters; (4) excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to Plaintiffs because of the known disability of an individual with whom the individual is known to have a relationship or association, in violation of 42 U.S.C. § 12182(b)(1)(E); and (5) failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 42 U.S.C. § 12182(b)(2)(A).

235.    As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiffs and/or additional deaf persons.

236.    Plaintiffs, excluding Ella Mae Hammack, are therefore entitled to injunctive relief, as well as an award of attorney's fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief against the Defendant:

A.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

subjected Plaintiffs to discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the Arizonans with Disabilities Act;

B.   Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that denies individuals who are deaf or hard of hearing, such as Plaintiffs, meaningful access to and full and equal enjoyment in Defendant's services or programs;

C.   Order Defendant:

i.   to develop and comply with written policies, procedures, and practices to ensure that Defendant does not discriminate in the future against Plaintiffs and other similarly situated individuals who are deaf or hard of hearing by failing to provide effective communication;

ii.   to develop, promulgate, implement and comply with a policy requiring that when a patient or other deaf individual appearing as a companion or family member for a patient requests an on-site interpreter for effective communication, a fully qualified sign language interpreter will be provided as soon as practicable in all services offered by Defendant;

iii.   to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state law. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv.   to develop, implement, promulgate, and comply with a policy to ensure, in the event any facility operated by Defendant utilizes a Video Remote Interpreting System ("VRI"), that such system has all functions and

31

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

characteristics necessary to ensure it provides for effective communication given all the conditions and circumstances present, including without limitation that such system utilizes;  1) a  high-speed Internet connection; 2) a video screen and camera with appropriate size, resolution, position, capture angle, focus, and proximity to the deaf individual; and 3) appropriate audio quality. When necessary for effective communication the equipment must be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v.  to provide at all times adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications equipment or resources are maintained at all times in proper working condition and can be promptly fixed in time to avoid any prejudice or unreasonable delay in patient care or companion communication;

vi.  to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

vii.  to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

viii.  to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Section 504 of the Rehabilitation Act, 1557 of the Affordable Care Act and the AzDA;

ix.  to train all its employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative means of communication do not provide effective communication for a deaf patient

32

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

or other deaf and hard of hearing companions or visitors to the Defendant's facilities;

    x.    to train its employees, staff, and other agents on a regular basis about Defendant's policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

D.    Award to Plaintiffs:

    i.    compensatory damages pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the Arizonans with Disabilities Act sufficient to fully remedy all damages, suffering, injury and losses caused to Plaintiffs by Defendant;

    ii.    to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish Defendant and to deter similarly situated persons or entities from similar future conduct;

    iii.    reasonable costs and attorneys' fees pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA;

    iv.    interest on all amounts at the highest rates and from the earliest dates allowed by law;

    v.    any and all other relief that this Court finds just, necessary and appropriate.

## **JURY DEMAND**

Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

RESPECTFULLY SUBMITTED this 18th day of June, 2019.

BASKIN RICHARDS PLC

/s/ William A. Richards
William A. Richards
Peter A. Silverman
Austin J. Miller
2901 N. Central Avenue, Suite 1150
Phoenix, AZ  85012

AND

EISENBERG & BAUM, L.L.P.
Eric Baum, Esq.
Andrew Rozynski, Esq.
24 Union Square East
Fourth Floor
New York, NY 10003
*Attorneys for Plaintiffs*